FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2019 DEC 19 PM 2: 47

CLERK _____
SO. DIST. OF GA. ____

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| THERESE RYAN, Individually and on behalf of the Estate of KEVIN WILLIAM RYAN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. CV419-223 |
| RED RIVER HOSPITAL, LLC, ACADIA HEALTHCARE COMPANY, INC., and JOHN DOES 1-10, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## O R D E R

Before the Court are Defendants Red River Hospital, LLC and Acadia Healthcare Company, Inc.'s Motion to Transfer Venue (Doc. 19) and Defendant Red River Hospital, LLC's Motion to Dismiss for Lack of Jurisdiction (Doc. 20). Plaintiff has responded in opposition. This case arises out of the death of Mr. Kevin William Ryan ("Mr. Ryan"), who committed suicide in his residence in Port Wentworth, Georgia after being discharged from Red River Hospital, LLC. (Doc. 10 at ¶ 20.) Plaintiff, Mr. Ryan's widow and Court appointed administrator of the Estate of Mr. Ryan, brought suit against Defendants Red River Hospital, LLC ("Red River"), Acadia Healthcare Company, Inc. ("Acadia"), Harvey C. Martin, MD, and John Does 1-10 alleging negligence,

negligence per se, and wrongful death under Georgia law. (Doc. 10.) Defendant Harvey C. Martin, MD has since been dismissed from this action. (Doc. 21; Doc. 24.) Defendants Red River and Acadia now seek to transfer this case to the United States District Court for the Northern District of Texas. (Doc. 19 at 1.) Defendant Red River also seeks dismissal from this action on the basis that this Court lacks personal jurisdiction over it. (Doc. 20 at 1.) For the following reasons, Defendants' Motion to Transfer Venue is **DENIED** and Defendant Red River's Motion to Dismiss for Lack of Jurisdiction is **DENIED**.

## BACKGROUND

Defendant Red River, a mental health facility that operates in Wichita Falls, Texas, is a Delaware limited liability company that maintains its principal place of business in Texas. (Doc. 10 at ¶ 2.)[1] Defendant Acadia is a Delaware corporation with its principal place of business in Tennessee and is the owner and operator of Defendant Red River. (Id. at ¶ 3.) Plaintiff, individually, is a citizen of the state of Illinois and the Estate of Mr. Ryan is a citizen of Georgia. (Id. at ¶ 1.)

---

[1] In their motion to transfer venue, Defendants state that Red River has its principal place of business in Wichita Falls, Texas. (Doc. 19 at 1.)

Mr. Ryan, a United States veteran, was facing charges in the Municipal Court of the City of Port Wentworth, Georgia and a judge of that court released Mr. Ryan from confinement in the Chatham County Detention Center to seek treatment at Laurel Ridge Treatment Center ("Laurel Ridge") in San Antonio, Texas. (Id. at ¶ 13.) In the complaint, Plaintiff alleges that Mr. Ryan was transferred from Laurel Ridge on or about August 7, 2017 to Red River Pathways Outpatient Program for more intense treatment due to his suicidal ideations. (Id. at ¶ 14.) Plaintiff alleges that, upon his admission, Mr. Ryan informed Red River of his pending charges and the fact that he was ordered by a judge to seek treatment. (Id.) Shortly thereafter, Mr. Ryan was admitted to the inpatient facility at Red River for additional treatment and monitoring. (Id. at ¶ 15.)

On September 12, 2017, Dr. Martin ordered that Mr. Ryan be chaperoned upon his discharge and remanded to the custody of the Chatham County Sheriff. (Id. at ¶ 16.) The following day, on September 13, 2017, Mr. Ryan was discharged from the inpatient facility at Red River and traveled to Savannah/ Hilton Head International Airport. (Id. at ¶ 17.) Plaintiff alleges that Defendants John Does 1-10 arranged the flights and provided the chaperoning to Mr. Ryan. (Id.) Plaintiff alleges that Defendants John Does 1-10 left Mr. Ryan

3

unattended and did not return him to the custody of the Chatham County Sheriff and that all Defendants failed to notify the law enforcement agency originally having custody over Mr. Ryan of his discharge. (Doc. 10 at ¶ 18-19.) Mr. Ryan went to his residence in Port Wentworth, Georgia where he committed suicide. (Id. at ¶ 20.)

In the amended complaint, Plaintiff alleges a count of negligence against all Defendants contending that the Defendants knew or should have known that Mr. Ryan, if not chaperoned appropriately, was likely to cause bodily harm to himself. (Id. at ¶ 23.) Plaintiff contends that Defendants negligently breached their duty by failing to properly chaperone Mr. Ryan, failing to notify law enforcement of Mr. Ryan's discharge and travel plans, failing to notify court personnel of Mr. Ryan's discharge and travel plans, failing to properly transport Mr. Ryan into the care and custody of the proper authorities, and other acts or omissions that may be shown at trial or revealed in discovery. (Id. at ¶¶ 26-27.) Plaintiff also brings a count of negligence per se against all Defendants alleging that Defendants had a duty to adhere to the laws of the state of Georgia due to the voluntary assumption of responsibility for the transportation and surrender of Mr. Ryan in Chatham County, Georgia. (Id. at ¶ 30.) Plaintiff contends that Defendants

were negligent per se by (1) failing to provide notice of discharge to the court which originally ordered involuntary commitment on June 7, 2017, pursuant to O.C.G.A. § 37-3-95, (2) failing to provide notice of discharge to the law enforcement agency that originally had custody of Mr. Ryan pursuant to O.C.G.A. § 37-3-94 and O.C.G.A. § 37-3-95, and (3) failing to provide written notification by certified mail or statutory overnight delivery of the proposed discharge to the law enforcement agency pursuant to O.C.G.A. § 37-3-95. (Id. at ¶ 31.) Plaintiff also brings a count for wrongful death against all Defendants, a count for punitive damages against all Defendants, and a count for attorneys' fees and expenses against all Defendants. (Doc. 10 at ¶¶ 33-42.)

## ANALYSIS

### I.   MOTION TO TRANSFER VENUE

In their motion to transfer venue, Defendants Red River and Acadia argue that this Court should transfer venue to the United States District Court for the Northern District of Texas because none of the Defendants reside in the United States District Court for the Southern District of Georgia and because none of the relevant events upon which Plaintiff's amended complaint is based took place in this district. (Doc. 19 at 1.) Plaintiff has responded in

opposition and contends that this venue is the proper and most convenient venue. (Doc. 23 at 3-11.)

## A. Whether the Action Could Have Been Brought in the Proposed Alternative Forum

"A district court may transfer any civil action to any other district or division where it might have been brought" if transfer is based upon the convenience of the parties, the convenience of the witnesses, or the interest of justice. 28 U.S.C. § 1404(a). Thus, the first step is to determine whether this action could have been brought in the Northern District of Texas. Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). Under 28 U.S.C. § 1391(b), a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendants contend that venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b). (Doc. 19 at 3.) Defendants primarily argue that the Northern District of Texas is a proper venue because a substantial part of the events giving raise to the claim arose there. (Id. at 3-4.) In response, Plaintiff contends that Plaintiff's causes of action "arise out of and accrue after the failure of Defendants to turn Sergeant Ryan over to Chatham County officials after his arrival in Chatham County." (Doc. 23 at 4.)

The Court finds that this action could have been brought in the Northern District of Texas. Although Plaintiff claims that the event that directly gave rise to Plaintiff's claims was Defendants' failures in Chatham County, a review of the amended complaint shows that Plaintiff seeks to hold Defendants liable for breaching a duty for actions that occurred in Texas as well. Plaintiff contends that Defendants negligently breached their duty by failing to properly chaperone Mr. Ryan, failing to notify law enforcement of Mr. Ryan's discharge and travel plans, failing to notify court personnel of Mr. Ryan's discharge and travel plans, failing to properly transport Mr. Ryan into the care and custody of the proper authorities, and other acts or omissions that may be shown at trial or

revealed in discovery. (Doc. 10 at ¶¶ 26-27.) Many of the allegations of Defendants' negligence hinge on what Defendants did, or did not do, in Texas with the exception of not handing over physical custody of Mr. Ryan to law enforcement officials at the airport in Savannah, Georgia and failing to properly chaperone Mr. Ryan. Even those factual allegations presuppose a duty prior to the arrival in Georgia—e.g. Plaintiff claims that the release of Mr. Ryan was negligent because Defendants had a duty to, prior to his discharge, communicate the discharge and arrange for an exchange of custody. Those actions would have occurred in Texas. Accordingly, the Court finds that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Texas such that the case could have originally been brought in the Northern District of Texas. The Court now turns to the central issue in this case: whether the Northern District of Texas would be a more convenient forum than the Southern District of Georgia.

B. Whether Transfer is More Convenient for the Parties and Witnesses

If the case could have originally been brought in the transferee venue, the forum court next looks to nine factors to determine whether to effect transfer: (1) the convenience of the witnesses; (2) the location of relevant documents and

the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Weintraub v. Advanced Corr. Healthcare, Inc., 161 F. Supp. 3d 1272, 1279 (N.D. Ga. 2015).

### 1. Convenience of the witnesses

Defendants argue that the key witnesses in this case will be the physicians, nurses, and other individuals who cared for Mr. Ryan at Red River and the healthcare professionals at Laurel Ridge as these individuals possess information as to "what was communicated to Red River regarding Mr. Ryan's ultimate release from the facility and whether this was to be a release back to the custody of law enforcement at the Chatham County Detention Center." (Doc. 19 at 5.) In opposition, Plaintiff argues that the key witnesses are not these healthcare professionals but instead are the Chatham County coroner, the law enforcement officers that investigated Mr. Ryan's suicide, the employees at the airport, Mr. Ryan's neighbors, Chatham County Detention

Center officials, and prosecutors, defense attorneys and judicial staff that were involved in the underlying criminal action against Mr. Ryan. (Doc. 23 at 5.)

The Court finds this factor to be neutral on the question of transfer as there appears to be key non-party witnesses in both Texas and Georgia. Defendants note, and Plaintiff acknowledges, that this action focuses on the duty that Red River allegedly owed to Mr. Ryan and the actions or omissions that constitute a breach of that duty. While Defendants dispute the application of Georgia law to this action and argue that the case is, in reality, a medical malpractice action, Defendants highlight that any alleged duty owed pursuant to O.C.G.A. § 37-3-94 and O.C.G.A. § 37-3-95 requires Plaintiff to prove, among other things, that (1) a patient was placed into involuntary treatment and (2) the facility received written notification that the patient was under criminal charges. (Doc. 26 at 5-6.)

Thus, to establish liability, Plaintiff will have to prove that Red River owed a duty to Mr. Ryan. As Laurel Ridge first took custody of Mr. Ryan, Plaintiff will have to prove that Laurel Ridge had a duty and knew their discharge obligations (which would come from Laurel Ridge, a Texas citizen, and the Georgia state court personnel and law enforcement) and then subsequently that this information was

communicated to Red River (which will come from Laurel Ridge, a Texas citizen, and Red River, also a Texas citizen). Moving from existence of a duty to the breach, Plaintiff will have to prove, among other things, that Red River did not notify and inform the Georgia officials of Mr. Ryan's release. This information will come from Red River, a party located in Texas, and the law enforcement and court personnel in Georgia. The key non-party witnesses, therefore, appear to be split between Georgia and Texas. Therefore, some key witnesses in this action will be subject to inconvenience whether or not the case remains in this Court or is transferred.

  2. The location of relevant documents and the
     relative ease of access to sources of proof

The Court finds the "location of relevant documents" factor to be neutral. While Defendants claim that a majority of the documentary evidence will be in Texas, such as e-mails, travel plans and documents, and orders (Doc. 19 at 6), Plaintiff states that Defendants have already produced the purported entirety of their records and those of Laurel Ridge during the pre-suit investigation (Doc. 23 at 6). Defendants have not presented argument as to why any remaining documentation would be difficult to produce in

Georgia. Accordingly, the second factor is neutral on the question of transfer.

### 3. Convenience of the parties

Defendants contend that Plaintiff is a resident of Illinois and will be required to travel for this case— whether or not it is pending in Georgia or Texas. (Doc. 19 at 6.) In response, Plaintiff argues that she is a citizen of Illinois where she is domiciled, in her individual capacity, and a citizen of Georgia, in her capacity of legal representative of the estate of Mr. Ryan. (Doc. 23 at 6-7.) While it is true that Plaintiff is considered a citizen of Georgia for purposes of diversity jurisdiction, this factor looks at the convenience of the parties litigating the case. It is undisputed that Plaintiff resides in Illinois. In arguing that Georgia is a more convenient forum, Plaintiff claims that transferring the venue would "shift the inconvenience" from Defendants to Plaintiff as Plaintiff's witnesses reside in Georgia. (Id. at 7.)

The Court finds that this factor does not support transferring the action. First, while the Court notes that Plaintiff will have to travel regardless of whether it is pending in Georgia or Texas, Plaintiff has chosen this forum and argues that it is more convenient as the witnesses she seeks to rely on reside in Georgia. Additionally, the Court

12

notes that all parties have retained local counsel and are actively litigating this action.

### 4. Locus of operative facts

The "locus of operative facts" factor is neutral. Defendants argue that the locus of operative facts is Texas as this is the location where the alleged duty arose and the where the failures giving rise to negligence occurred. (Doc. 19 at 7.) Plaintiff, however, argues that the Southern District of Georgia is the locus of operative facts as Plaintiff must rely on testimony from events that transpired in Georgia, not Texas. (Doc. 23 at 7-8.) Plaintiff's claims of negligence occurred in both Texas and Georgia. Additionally, as discussed above, whether Red River was negligent requires Plaintiff to prove that Red River owed the duty in the first instance. While some of Red River's conduct occurred in Texas (e.g. not communicating Mr. Ryan's discharge and travel plans to officials in Georgia), the question of duty will likely also require Plaintiff to show that Mr. Ryan was involuntarily committed by the Georgia court, that the discharge obligations were communicated to Laurel Ridge, and that Laurel Ridge communicated this duty to Red River. These events span across the two states.

### 5. Availability of process to compel the attendance of unwilling witnesses

The Court finds this factor to be neutral. As discussed above, both Defendants and Plaintiff provide that there are non-party witnesses that are or will be necessary to this action that reside in either Georgia or Texas. Thus, whether the venue is in the Southern District of Georgia or the Northern District of Texas, there is a risk that some witnesses will be outside the subpoena power of the district court.

### 6. Relative means of the parties

Plaintiff contends that this factor falls in her favor because she is a single mother raising two children and Defendants are two large companies. As Plaintiff will be traveling to either Georgia or Texas from Illinois, the Court is not persuaded by Plaintiff's contention that her relative means is that large of a factor in transfer. Other than the fact that she may have to travel to Georgia to take the depositions of her witnesses here, Plaintiff has not shown that litigating the case in Georgia is more economical than litigating in Texas. Additionally, as discussed above, there are also witnesses in Texas that Plaintiff will have to travel to depose. Thus, regardless of whether the action

is maintained in Georgia or transferred to Texas, Plaintiff will need to travel.

7. Forum's familiarity with the governing law

Defendants contend that this case is a medical malpractice case in which Texas law would apply because the operative events all occurred in Texas. (Doc. 19 at 8.) However, Plaintiff's amended complaint does not allege any negligence in Mr. Ryan's care. Rather, the complaint focuses on negligence surrounding the communication of his discharge to officials in Georgia. Plaintiff brings her claims under Georgia law, including a claim for negligence per se for violating O.C.G.A. § 37-3-94 and O.C.G.A. § 37-3-95. It is reasonable to believe that a federal district court sitting in diversity in Georgia is more familiar with applying Georgia law than a federal district court in Texas.

8. Weight accorded a plaintiff's choice of forum

Plaintiff argues that her choice of forum should be given deference, especially since she, as legal representative for the Estate of Mr. Ryan, is a Georgia citizen. Defendants, however, argue that she is a resident of Illinois and her choice is entitled to no deference. For the purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28

15

U.S.C. § 1332(c)(2). Thus, Plaintiff, to the extent she is serving as legal representative of the Estate of Mr. Ryan, is considered a citizen of Georgia. Her decision to bring suit here is entitled to some deference. Accordingly, this factor weighs against transfer.

### 9. Trial efficiency and the interests of justice, based on the totality of the circumstances

The Court finds that this factor generally weighs against transferring this action. As noted above, the parties have already retained local counsel and the allegations in the complaint are based on Georgia law. Retaining the case will move this action forward as there would not be any delay in the parties having to find local counsel in Texas. Defendant has not presented argument as to why the requested forum would provide efficiency or a benefit in the judicial interest that clearly outweighs the current forum.

### C. Conclusion

A majority of the factors are either neutral or weigh against transferring this action to the Northern District of Texas. Accordingly, for the reasons stated above, the Court **DENIES** Defendants Red River and Acadia's Motion to Transfer Venue (Doc. 19).

II.  MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant Red River argues in its motion to dismiss that this Court lacks personal jurisdiction over it because the requirements of Georgia's Long-Arm Statute have not been satisfied and because Plaintiff has not alleged facts that will satisfy due process. (Doc. 20.) Plaintiff has responded in opposition to these positions. (Doc. 22.)

A federal court sitting in diversity "undertakes a two-step inquiry to determine whether personal jurisdiction exists." Waite v. All Acquisition Corp., 901 F.3d 1307, 1312 (11th Cir. 2018), cert. denied sub nom. Waite v. Union Carbide Corp., 139 S. Ct. 1384, 203 L. Ed. 2d 611 (2019). The Court must first determine if the forum state's long-arm statute provides for the exercise of jurisdiction and then whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Id. Georgia's Long-Arm Statute provides that personal jurisdiction may be exercised over any non-resident if the non-resident, either in person or through an agent:

> 1) Transacts any business within this state;
> 2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> 3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor

regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

4) Owns, uses, or possesses any real property situated within this state;

5) With respect to proceedings for divorce, separate maintenance, annulment, or other domestic relations action or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce; or

6) Has been subject to the exercise of jurisdiction of a court of this state which has resulted in an order of alimony, child custody, child support, equitable apportionment of debt, or equitable division of property if the action involves modification of such order and the moving party resides in this state or if the action involves enforcement of such order notwithstanding the domicile of the moving party.

O.C.G.A. § 9-10-91.

Plaintiff argues that she has demonstrated in her complaint that Defendant Red River is subject to personal jurisdiction in Georgia pursuant to subsection (2) of O.C.G.A. § 9-10-91, which provides for jurisdiction over a non-resident when the non-resident "commits a tortious act

18

or omission within this state." (Doc. 22 at 3-4.) The Court agrees. In her amended complaint, Plaintiff alleges that Defendants negligently breached their duty in a number of ways including "failing to properly chaperone Mr. Ryan and to control his actions," and "fail[ing] to properly transport Mr. Ryan into the care and custody of the proper authorities." (Doc. 10 at ¶¶ 26-27.) While Defendant contends the tortious activity occurred in Texas (Doc. 27 at 2-4), Plaintiff has alleged that one of the acts of negligence was leaving Mr. Ryan at the airport in Savannah unattended and failing to turn him over to the authorities in Georgia and that, as a result of being left unattended in Savannah, he went to his residence and committed suicide (Doc. 10 at ¶¶ 18-20). Thus, Plaintiff has alleged that Defendant Red River committed a negligent act or omission inside the state of Georgia. The Court finds that Georgia's Long-Arm Statute provides for personal jurisdiction over Defendant Red River.

The Court must now determine whether the exercise of personal jurisdiction over Defendant Red River comports with due process. To determine whether the exercise of specific jurisdiction affords due process, this Court applies a three-part test. Waite, 901 F.3d at 1313 (citing Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355

19

(11th Cir. 2013)). The Court considers first whether the plaintiff "ha[s] established that [her] claims 'arise out of or relate to" at least one of the defendant's contacts with the forum state. Id. The second element is whether the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. Id. Finally, if the plaintiff carries their burden of establishing the first two prongs, this Court turns to the question of whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (internal quotation marks omitted).

Under the first prong, this Court looks to the "affiliation between the forum and the underlying controversy, focusing on any activity or . . . occurrence that [took] place in the forum State." Waite, 901 F.3d at 1314 (internal quotation marks and citation omitted). Thus, "a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." Id. (quoting Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1222-23 (11th Cir. 2009)). Plaintiff argues that "but-for Defendant's tortious act(s) in Georgia" of leaving Mr. Ryan unattended and failing to

transfer him into the custody of officials in Georgia, Mr. Ryan would not have committed suicide in his home. (Doc. 22 at 5.) Defendant Red River argues that Plaintiff's complaint actually focuses on the issuance of orders from Texas and the alleged lack of communication with authorities in Georgia that should have been initiated in Texas. (Doc. 20 at 5.) The Court disagrees with Defendant Red River's narrow application of the "but for" standard. First, Plaintiff's complaint is clear in that Plaintiff is claiming that Mr. Ryan's suicide occurred due a number of negligent acts or omissions on part of Defendants and that, particularly, the result of leaving Mr. Ryan unattended at the Savannah airport and failing to turn him over to Georgia authorities caused Mr. Ryan's suicide. The relevant contact with Georgia is an agent of Defendant Red River's escorting Mr. Ryan to Georgia to remand him to the custody of local law enforcement. Plaintiff is claiming that Defendants committed an act of negligence that arose directly from this contact. Thus, the contact or activity of traveling with Mr. Ryan, leaving him at the airport, and not turning him over to local law enforcement can reasonably be construed to be "but for" causes of his suicide.

In Waite, for example, the Eleventh Circuit found that the plaintiffs could not establish that their claims

21

"ar[o]se out of or related to" the defendant's contacts in Florida because none of those contacts were a but for cause of the torts the plaintiffs alleged. 901 F.3d at 1315. The Eleventh Circuit noted that the allegations were that the defendant "negligently failed to warn its users of the dangers of asbestos, defectively designed its products, and failed to use reasonable care in distributing its products," but that the contacts relied upon were "holding a seminar in Florida, [the defendant's] plant in Brevard County, and [the defendant's] sales in Florida." Id. The Court found that the plaintiffs were not alleging that the asbestos that caused the injury was manufactured in Florida, that the seminar in Florida contributed to the defendant's failure to warn, or that they were ever exposed to the defendant's asbestos in Florida. Id. The Court additionally noted that the plaintiff's injury occurred in Florida only because of the plaintiff's contacts with the forum, e.g. choosing to move to Florida, not because of any contacts made by the defendant. Id. at 1316.

The same does not hold true here. While Mr. Ryan was a resident of Georgia, the facts thus far show that (1) Dr. Martin included in Mr. Ryan's discharge plan that Mr. Ryan was "being remainded [sic] into the custody of local law enforcement officials in Chatham County, GA for processing"

22

of his charges (Doc. 22, Attach. 3 at 3), (2) an agent or employee of Red River arranged for the flight to Savannah with an escort (Doc. 22, Attach. 1 at 2), (3) an agent of Red River did in fact accompany Mr. Ryan on a plane to Savannah, Georgia, and (4) the agent did not transfer custody of Mr. Ryan to local law enforcement officials in Georgia (Doc. 27 at 2 ("[w]hile it is undisputed that Red River was aware Kevin Ryan was being accompanied back to his home state upon discharge. . .")). This is not a case in which the contacts with the forum are wholly unrelated to the alleged torts. Accordingly, the Court finds that the first prong of the Due Process analysis has been met.

Under the second prong of the due process analysis, the Court must determine whether the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. Plaintiff contends that she has adequately shown that Defendant Red River has purposefully availed itself because the evidence shows that agents of Red River arranged the flight to Savannah and escorted Mr. Ryan to Savannah. (Doc. 22 at 5-6.) Defendant Red River, however, argues that "[w]hile it is undisputed that Red River was aware Kevin Ryan was being accompanied back to his home state upon discharge, the significance of this action is very much in

23

dispute." (Doc. 27 at 2.) Thus, Defendant Red River does not dispute that its agents arranged for travel for Mr. Ryan, and one of its agents, to Georgia and one of its agents escorted him to Savannah, Georgia.

The Court finds that Defendant Red River has purposefully availed itself in this forum. Dr. Martin, an employee of Defendant Red River, included in his discharge plan for Mr. Ryan that Mr. Ryan was "being remainded [sic] into the custody of local law enforcement officials in Chatham County, GA for processing" of his charges (Doc. 22, Attach. 3 at 3), an agent or employee of Red River arranged for the flight to Savannah with an escort (Doc. 22, Attach. 1 at 2), and an agent of Red River did in fact accompany Mr. Ryan on a plane to Savannah, Georgia (Doc. 27 at 2). "The focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1268 (11th Cir. 2010). Here, Defendant Red River, by or through its agents, arranged travel for one of its employees/agents and Mr. Ryan to Savannah, Georgia, did in fact escort Mr. Ryan to Georgia, and, from the evidence presented thus far, had agreed or intended to remand him to the custody of local

law enforcement. (Doc. 22, Attach. 3 at 3-4.) The Court finds these actions to show that Defendant Red River deliberately engaged in activities with this forum.

Thus, the Court arrives at the last prong of the due process analysis which asks whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Waite, 901 F.3d at 1313. Defendant Red River argues that exercising personal jurisdiction over it would not comport with traditional notions of fair play and substantial justice because (1) it is a Texas company that provided care to Mr. Ryan in Texas and the burden of defending the suit in Georgia is high, (2) Georgia has a limited interest in adjudicating this dispute as most of the acts of alleged negligence occurred in Texas, and (3) as Plaintiff does not reside in Georgia, this forum is no less convenient to Plaintiff than Texas for resolving this dispute. (Doc. 20 at 6.)

In determining whether an exercise of jurisdiction would violate traditional notions of fair play and substantial justice, this Court looks "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Diamond Crystal Brands, Inc., 593 F.3d at 1274 (internal quotation marks and citation omitted).

The Court is not persuaded by Defendant Red River's contention that being haled into court in this forum would offend traditional notions of fair play and substantial justice. First, as discussed in more detail in relation to the motion to transfer venue, Plaintiff's claims of negligence span across Texas and Georgia. Thus, there will be burdens on both parties in litigating this case, whether the case is in Texas or Georgia. Additionally, as stated, the evidence produced by Plaintiff thus far shows that Defendant Red River agreed to escort Mr. Ryan to Georgia and possibly had knowledge of an obligation to transfer custody to local law enforcement or otherwise intended to arrange such a transfer. (Doc. 22, Attach. 3 at 3-4.) This type of conduct would reasonably apprise a nonresident that it may have to defend itself in that forum. Finally, the Court finds that Georgia does have an interest in adjudicating this dispute. A Georgia citizen was released by a judge of the Municipal Court of the City of Port Wentworth, Georgia into the custody of Laurel Ridge, the citizen was

transferred or committed to Defendant Red River who then undertook a duty to escort the Georgia citizen back to Georgia where he was left unattended at an airport in Georgia and traveled to his home and committed suicide. Although Mr. Ryan received treatment in Texas from Defendant Red River and others, acts of alleged negligence occurred in Georgia to a Georgia citizen and resulted in an injury to that citizen in Georgia. Thus, Georgia has an interest in this dispute. Accordingly, for the reasons stated above, Defendant Red River's Motion to Dismiss for Lack of Jurisdiction should be denied.

## CONCLUSION

For the reasons state above, Defendants' Motion to Transfer Venue (Doc. 19) is **DENIED** and Defendant Red River's Motion to Dismiss for Lack of Jurisdiction (Doc. 20) is **DENIED**.

SO ORDERED this _19th_ day of December 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA